## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LEWIS GREEN,

      Plaintiff/Counter-Defendant,

v.                                        Civ. No. 18-817 JAP/SMV

STEVE CLINGMAN,

      Defendant/Counterclaimant.

### MEMORANDUM OPINION AND ORDER

On November 7, 2013, Plaintiff Lewis Green and Defendant Steve Clingman were involved in an altercation in Lea County, New Mexico that led to the exchange of gunfire. Following an investigation by law enforcement, Plaintiff was charged by criminal complaint in state court with aggravated assault, shooting at or from a motor vehicle, and bribery of a witness. In May 2016, a jury convicted Plaintiff of bribery, but acquitted him on the other charges. Plaintiff subsequently commenced this federal court lawsuit against Defendant for malicious abuse of process. In his AMENDED COMPLAINT FOR DAMAGES (Doc. 4) (Amended Complaint), Plaintiff asserts that Defendant lied to law enforcement during the investigation and then testified falsely during the state criminal proceedings against Plaintiff. *Id*. ¶¶ 9–10.

Defendant now seeks summary judgment on Plaintiff's malicious abuse of process claim. *See* OPPOSED MOTION FOR SUMMARY JUDGMENT (Doc. 31). Having considered the briefing, the evidence, and the applicable law, the Court will GRANT the motion and will dismiss Plaintiff's malicious abuse of process claim with prejudice.

### I.    Factual Background and Procedural History

As a preliminary matter, the Court notes that in his RESPONSE TO MOTION FOR SUMMARY JUDGMENT (Doc. 34) (Response), Plaintiff sets forth a summary of facts in a

"Background of Events" section that does not comply with the Court's Local Rule regarding the format of a response brief that opposes a motion for summary judgment. *See* D.N.M.LR-Civ. 56.1(b) (stating that "[e]ach fact in dispute must be **numbered**, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the **number** of the movant's fact that is disputed. . . .The response may set forth additional facts other than those which respond to the motion which the non-movant contends are material to the resolution of the motion. Each additional fact must be **lettered** and must refer with particularity to those portions of the record upon which the non-movant relies." (emphasis in D.N.M.LR-Civ. 56.1(b)). Because Plaintiff's "Background of Events" section consists entirely of factual assertions without any citations to the record, the Court will not consider it for purposes of ruling on the summary judgment motion. That said, the Court will consider those facts that Plaintiff identified later in his Response as disputed. *See* Doc. 34 at 3.

As stated earlier, an altercation took place on November 7, 2013 between Plaintiff and Defendant that escalated to the exchange of gunfire between the two parties.[1] Doc. 31 at 2. In his 911 call immediately following the altercation, Defendant reported that he had been shot at, that he had returned fire, and that there was damage to his pickup truck. *See* Doc. 34-1 (Pl. Ex. 1). Defendant identified Plaintiff as the individual he believed shot at him. *Id*. Plaintiff also contacted law enforcement on the day of the altercation. *See* Doc. 31 at 2 (citing Lewis Green Depo., July

---

[1] Neither party presents any evidence in his summary judgment briefing regarding the events that led to the altercation. For purposes of clarity only, the Court notes that the Amended Complaint for Damages alleges the following regarding the altercation:

> Defendant, a resident of Texas, was acting in the course and scope of his employment with Seely Oil Company on November 7, 2013. Doc. 4 at ¶ 3. While acting in the course and scope of his duties as manager of Caviness Ranch, Plaintiff observed Defendant drive a pickup truck on a Caviness ranch road in order to get to a federally owned well site. *Id*. The road was posted to prohibit use of that road by oil-field related vehicles. *Id*. Plaintiff went to the well site in order to advise Defendant not to use the ranch road. *Id*. Upon arriving at the well site, an argument ensued between the parties that escalated to the exchange of gunfire. *Id*. at ¶ 4.

24, 2019, at 169:6–11). Although his interaction with law enforcement is not part of the summary judgment record, Plaintiff testified in his deposition that Defendant shot at him first and that he only returned fire with one shot after Defendant shot at him sixteen times. *See* Green Depo. at 97:16–21, 98:6–11. Sheriff deputies who responded to the scene informed Plaintiff that Defendant was not going to press charges. Doc. 31 at 2 (citing Green Depo. at 170:17–22).

At some point thereafter, the Fifth Judicial District Attorney's Office commenced an investigation into the incident. *Id*. (citing Green Depo. at 104:12–25). Patrick Barncastle, lead investigator with the Fifth Judicial District Attorney's Office, conducted the investigation. *Id*.; *see also* CRIMINAL COMPLAINT (Attachment A), *State v. Lewis Green*, No. D-506-CR-2014-00505.[2] During the course of his investigation, Mr. Barncastle spoke with Plaintiff, Defendant, and Emilio Aguilar, who witnessed the altercation. *Id*. Mr. Barncastle also interviewed a number of other individuals. *Id*. Upon completion of the investigation, Mr. Barncastle filed a criminal complaint in Lea County Magistrate Court charging Plaintiff with aggravated assault, shooting at or from a motor vehicle, and intimidation or threatening a witness. *Id*. A Lea County Magistrate Court Judge held a preliminary examination and found probable cause to bind Plaintiff over for trial in district court. *See* BIND-OVER ORDER (Doc. 31-3). In district court, the Fifth Judicial District Attorney's Office filed a criminal information charging Plaintiff with bribery of a witness (threats or false testimony), aggravated assault with a deadly weapon, and shooting at or from a motor vehicle (no great bodily harm). *See* CRIMINAL INFORMATION (Doc. 31-1). The case

---

[2] Although the criminal complaint is not part of the summary judgment record, the Court may take judicial notice of publicly filed court records that bear directly upon the disposition of the case at hand. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007). The Court has reviewed the official record in Plaintiff's underlying state court criminal proceedings through the New Mexico Supreme Court's online Secured Odyssey Public Access (SOPA). The Court will take judicial notice of the state court records in Plaintiff's criminal case, *State v. Lewis Green*, No. D-506-CR-2014-00505.

proceeded to trial, and on May 27, 2016, a jury found Plaintiff guilty of bribery of a witness. *See* Doc. 31-2.

Two years later, Plaintiff commenced this lawsuit against Defendant and Defendant's employer, Seely Oil Company, for malicious abuse of process. *See* AMENDED COMPLAINT FOR DAMAGES FOR MALICIOUS ABUSE OF PROCESS (Doc. 4). Plaintiff subsequently stipulated to the dismissal of Seely Oil Company from the lawsuit. Doc. 35. Defendant moved for summary judgment, and the motion is fully briefed. *See* DEFENDANTS' OPPOSED MOTION FOR SUMMARY JUDGMENT (Doc. 31); RESPONSE TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANT CLINGMAN (Doc. 34); DEFENDANT CLINGMAN'S REPLY TO RESPONSE TO MOTION FOR SUMMARY JUDGMENT (Doc. 38).

## II.   Legal Standard

The Court will "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine dispute as to any material fact unless the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute "is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way[,]" and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (quotation marks and citations omitted). In reviewing a motion for summary judgment, the Court considers the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d 1151, 1156–57 (10th Cir. 2013) (quotation omitted). Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *See Shapolia v. Los Alamos*

4

*Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id.*

Because the Court is sitting in diversity jurisdiction, the substantive law governing this case is that of New Mexico. *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1164 (10th Cir. 2017); *Jones v. UPS*, 674 F.3d 1187, 1203 (10th Cir. 2012) (federal court sitting in diversity jurisdiction "applies federal procedural law and state substantive law").

## III.  Analysis

Under New Mexico law, the elements of the tort of malicious abuse of process are: "(1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages." *Durham v. Guest*, 204 P.3d 19, 26 (N.M. 2009); *see also* UJI 13–1636 NMRA. The first element—the misuse of process—can be shown in one of two ways: "(1) filing a complaint without probable cause, or (2) an irregularity or impropriety suggesting extortion, delay, or harassment, or other conduct formerly actionable under the tort of abuse of process." *See Durham*, 204 P.3d at 26 (quotation marks omitted). Plaintiff did not specify in his Amended Complaint the basis of his malicious abuse of process claim. *See* Am. Compl. at 3. But because the parties make arguments directed to both theories in their briefing, the Court will address each in turn.

### A.  *Probable Cause for Underlying Criminal Proceeding*

New Mexico courts have defined "probable cause" in the malicious abuse of process context as "the reasonable belief, founded on known facts established after a reasonable pre-filing investigation, that a claim can be established to the satisfaction of a court or jury." *DeVaney v. Thriftway Mktg. Corp.*, 953 P.2d 277, 285 (N.M. 1998) (internal citations and quotation marks

5

omitted), overruled on other grounds by *Durham*, 204 P.3d 19, 26; *see also* UJI 13–1639 NMRA. Critically, probable cause relates to the underlying complaint as a whole, and the plaintiff in the underlying action need not show favorable termination of each individual claim to establish an effective defense to a subsequent suit for malicious abuse of process. *See Fleetwood Retail Corp. of N.M. v. LeDoux*, 164 P.3d 31, 37 (N.M. 2007) (holding that "lack of probable cause is not a claim-by-claim inquiry, but, rather, is determined as to the lawsuit in its entirety, and any recovery by the original plaintiff will be an absolute defense to a malicious abuse of process claim founded on lack of probable cause.").

"The existence of probable cause [in the underlying proceeding] is a question for the district court." *O'Brien v. Behles*, 464 P.3d 1097, 1119 (N.M. Ct. App. 2020). "If factual issues relevant to the probable cause analysis are not in dispute, the court makes its determination, and further instructs the jury as necessary." *Id*. "However, if there are material disputes of fact relevant to the existence of probable cause, the jury must resolve them, preferably through special interrogatories." *Id.*; *see* UJI 13–1639 NMRA.

Defendant argues that he is entitled to summary judgment because the underlying criminal prosecution against Plaintiff was supported by probable cause. *See* Doc. 31 at 5. The Court agrees. It is undisputed that a jury convicted Plaintiff of bribery of a witness in the underlying criminal case. *See* Doc. 31-2. The conviction is conclusive evidence of the existence of probable cause. *See DeVaney*, 953 P.2d at 286 ("An unfavorable termination for the malicious abuse-of-process plaintiff, meaning some form of recovery for the original-proceeding plaintiff, is conclusive evidence of the existence of probable cause." (internal quotation marks and citation omitted)); *Rice v. Wright*, 2013 WL 4534807, at *2 (N.M. Ct. App. May 14, 2013) (stating that "an unfavorable termination of a criminal case is conclusive evidence that the allegations were supported by

probable cause"). Because the criminal case did not terminate in Plaintiff's favor, he cannot pursue a malicious abuse of process claim founded on a lack of probable cause. *See* Dan B. Dobbs et al., The Law of Torts § 590 (2d ed.) ("The malicious-prosecution plaintiff must show not only that the criminal prosecution of which he complains has been terminated but also that it has been terminated in his favor."); *see also* Restatement (Second) of Torts § 658 (1977) ("To subject a person to liability for malicious prosecution, the criminal proceedings must have terminated in favor of the accused.").

Plaintiff suggests that the Court should not consider his bribery conviction because he received a deferred sentence and the charge was dismissed after he completed the period of deferment. *See* Doc. 34 at 5. Although neither party has provided any evidence in the summary judgment record regarding Plaintiff's sentence, the Court may take judicial notice of documents filed in the underlying state court criminal proceeding. *See Ahidley*, 486 F.3d at 1192. The underlying state court records show that the state court sentenced Plaintiff to a "[d]eferred [s]entence and place[ment] on supervised probation for a period of one (1) year." *See State v. Green*, No. D-506-CR-2014-00505, ORDER TO CORRECT JUDGMENT AND SENTENCE AND DISMISSAL OF CHARGE (filed Feb. 8, 2018). After Plaintiff satisfactorily completed his supervised probation requirements, the state court dismissed the bribery charge in accordance with NMSA 1978, Section 31-20-9 (1977). *Id*; *see* NMSA § 31-20-9 ("Whenever the period of deferment expires, the defendant is relieved of any obligations imposed on him by the order of the court and has satisfied his criminal liability for the crime, the court shall enter a dismissal of the criminal charges.").

The Court disagrees with Plaintiff's contention that the deferred sentence and subsequent dismissal of the bribery charge was a favorable termination of his underlying case for purposes of

a malicious abuse of process claim founded on a lack of probable cause. The procedural disposition of his conviction by way of deferred sentence did not erase the earlier merits adjudication—i.e., the fact that a jury found Plaintiff guilty of bribery. Because the dismissal "was not due to any defect in the merits of the underlying claim," it does not constitute a favorable termination on the merits. *See Rice*, 2013 WL 4534807, at *2 ("A dismissal on grounds other than the merits does not constitute a favorable termination for purposes of a malicious abuse of process claim."); *see also Weststar Mortg. Corp. v. Jackson*, 61 P.3d 823, 832–33 (N.M. 2003) (stating that when a criminal prosecution is terminated for a reason that is not related to the merits, the termination is not considered to be favorable to the accused).

Plaintiff's reliance on *United States v. Reese*, 326 P.3d 454 (N.M. 2014), on this issue is misplaced. Doc. 34 at 5. In *Reese*, the New Mexico Supreme Court held that "dismissal of the criminal charges upon satisfaction of the conditions of deferment automatically restores a convicted felon's civil rights by operation of law." 326 P.3d at 465. The Supreme Court's ruling was limited to a determination of how completion of a term of deferment affects a defendant's civil rights. There is no indication that *Reese* stands for the proposition that a deferred sentence erases an adjudication of guilt. Indeed, the Supreme Court went so far as to state that "[r]estoring a defendant's civil rights does not require that the record of the conviction be erased." *Id*. at 465; *see also id*. at 464 ("criminal liability may be removed while leaving the adjudication of guilt as a mere notation in the record, which may be taken into account for other purposes"); *see also State v. Bros.*, 59 P.3d 1268, 1271 (N.M. Ct. App. 2002) ("Nothing in Section 31-20-9 suggests that when a deferred sentence expires and the charges are dismissed, the conviction no longer exists.").

In sum, though Plaintiff received a favorable procedural termination of his underlying criminal case, his bribery conviction nonetheless established the existence of probable cause. *See*

*Fleetwood*, 164 P.3d at 37 ("[A]ny recovery by the original plaintiff [in the underlying suit] will be an *absolute defense* to a malicious abuse of process claim founded on lack of probable cause" (emphasis added)). Consequently, Plaintiff's malicious abuse of process claim does not survive summary judgment to the extent it is based on a lack of probable cause theory.

### B. Procedural Impropriety or Irregularity

"Unlike lack of probable cause, the existence of a procedural impropriety does not depend on the outcome of the underlying suit[.]" *See Fleetwood*, 164 P.3d at 38; *see also Santillo v. N.M. Dep't of Pub. Safety,* 173 P.3d 6, 13 (N.M. Ct. App. 2007) (noting that "the procedural impropriety theory, unlike the lack of probable cause theory, does not stand or fall on the merits of the underlying claims," and that "even in meritorious cases the legal process may be abused"). "A use of process is deemed to be irregular or improper if it (1) involves a procedural irregularity or a misuse of procedural devices such as discovery, subpoenas, and attachments, or (2) indicates the wrongful use of proceedings, such as an extortion attempt." *Durham*, 204 P.3d at 26; *see also* UJI 13-1369A NMRA ("Misuse of the legal process occurs when a defendant engages in some impropriety in the use of the legal process that suggests extortion, delay, harassment, or some other illegitimate end. The legal process may be misused either by the irregular use of a procedure, or by some other act by the defendant that indicates the wrongful use of judicial proceedings."). Examples of acts considered a wrongful use of proceedings for purposes of a malicious abuse of process claim include:

> a request for excessive damages contained in the complaint; attachment on property other than that involved in the litigation or in an excessive amount; oppressive conduct in connection with the arrest of a person or the seizure of property; excessive execution on a judgment; using the process to put pressure on the other to pay a different debt; taking or refraining from taking some other action; oppressive conduct in discovery; and the misuse of the subpoena power.

*See* UJI 13-1639A NMRA Committee Commentary. In this case, Plaintiff does not allege that Defendant engaged in any of the above clear examples of misuse of the legal process. That is, Plaintiff has not alleged the misuse of any procedural devices such as discovery, subpoenas, or attachments.

Instead, Plaintiff's malicious abuse of process claim focuses on his assertion that Defendant provided false information during his initial 911 call and the subsequent law enforcement investigation. *See* Doc. 34 at 4–5 (arguing that "the actions of [Defendant] in firing at [Plaintiff's] vehicle; making false claims of [Plaintiff] shooting first; shooting his own vehicle and thereafter seeking to secure filing of [a] criminal charge is a malicious abuse of process under New Mexico law"). But "a report to authorities of possible criminal activity is not legal process and neither are the pre-trial investigative actions of the police" for purposes of a malicious abuse of process claim. *See Weststar Mortg. Corp.*, 61 P.3d at 833. Furthermore, as Plaintiff testified in his deposition, the investigation was spearheaded by the state district attorney's office and included interviews with Plaintiff, Defendant, an eyewitness to the altercation as well as multiple other individuals. Upon completion of the investigation, the district attorney's office made its own decision to pursue criminal charges against Plaintiff. There is nothing in the record suggesting that Defendant influenced or pressured the district attorney's office to pursue the criminal case. Nor is there any evidence suggesting that Defendant reported anything other than what he believed happened during the alteration. *See Zamora v. Creamland Diaries, Inc.*, 747 P.2d 923, 929 (N.M. Ct. App. 1987) ("A citizen, without fear of liability, may report information to the authorities upon mere suspicion. Efficient law enforcement requires that a private person who aids the police by giving honest, even if mistaken, information about crime, should be given effective protection from civil liability. Holding a citizen liable for making an honest mistake in reporting to the police would

have a chilling effect on an important source of information about crime.") (internal citations omitted). In sum, there is no indication that Defendant engaged in conduct that would be considered actionable as an improper use of legal process for purposes of a malicious abuse of process claim.

Even if Defendant's actions could be considered use of legal process, the Court concludes that the evidence proffered by Plaintiff does not create a disputed issue of fact regarding whether Defendant made false or misleading statements to law enforcement. Specifically, Plaintiff seeks to introduce the results of a polygraph test he took to counter Defendant's statement that Plaintiff shot at him first. *See* Doc. 34 at 4. According to Plaintiff, the polygraph results establish that it was actually Defendant who fired the first shot. *Id*. Plaintiff does not explain how the polygraph evidence would be admissible at trial. *See Wilkins v. De Reyes*, 2006 WL 8443775, at *10 (D.N.M. Aug. 16, 2006) ("If a party seeks to admit a polygraph test, that party must satisfy the criteria for admission of expert witness testimony under Federal Rules of Evidence 702 and 403, as well as *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)."). "At the summary judgment stage, evidence need not be submitted in a form that would be admissible at trial. . . . Nonetheless, the content or substance of the evidence must be admissible. . . . To determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury." *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (internal citations and quotation marks omitted). Because Plaintiff has not shown how the polygraph evidence would be admissible at trial, the Court cannot consider it as evidence on summary judgment. Even assuming the polygraph evidence passed muster under *Daubert*, the Court would still conclude that it fails to satisfy Federal Rule of Evidence 702 because Plaintiff seeks to use the polygraph evidence to undermine

Defendant's credibility. "[T]he credibility of witnesses is generally not an appropriate subject for expert testimony. This is because expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not assist the trier of fact as required by Rule 702." *Wilkins*, 2006 WL 8443775, *10 (internal citations and quotation marks omitted) (declining to consider polygraph evidence at summary judgment stage because defendants sought to use it for witness credibility purposes).

As for the other evidence cited by Plaintiff – namely pictures of the damaged vehicles and the testimony of a firearms examiner during the criminal case – he fails to explain how this evidence creates a triable fact issue regarding whether Defendant engaged in conduct that could be considered a misuse of legal process. *See Corona v. City of Clovis*, 406 F.Supp.3d 1187, 1205 (10th Cir. 2019) (finding that video of traffic stop was sufficient to create triable issues of fact for purposes of a malicious abuse of process claim because video controverted the allegations in the criminal complaint and thus, a reasonable jury could deduce that the police officer filed the complaint with false or misleading allegations); *Guest v. Berardinelli*, 195 P.3d 353, 360–61 (N.M. Ct. App. 2008) (declining to consider plaintiff's contentions of false and manufactured evidence for malicious abuse of process claim because she failed to direct the court to any evidence in the record supporting these allegations). The Court concludes that Plaintiff's malicious abuse of process claim does not survive to the extent it is based on a procedural impropriety theory.

In sum, Plaintiff has failed to meet the first element of a malicious abuse of prosecution claim and Defendant is therefore entitled to summary judgment. Although the Court is granting summary judgment in favor of Defendant based on its analysis of the first element, Defendant also contends that Plaintiff fails to meet the second element of a malicious abuse of process claim,

12

which is a primary motive in the use of process to accomplish an illegitimate end. *See* Doc. 31 at 6. Defendant points out that Plaintiff failed to plead any facts in his Amended Complaint that would suggest any motive on the part of Defendant. *Id*. The Court agrees. Plaintiff also failed to respond to this argument in his summary judgment briefing. Therefore, Defendant is entitled to summary judgment on this basis as well.

## IV. Conclusion

Based on the foregoing, the Court will grant Defendant Clingman's OPPOSED MOTION FOR SUMMARY JUDGMENT (Doc. 31) and will dismiss Plaintiff's malicious abuse of process claim with prejudice.

The Court notes that Defendant Clingman's counterclaim against Plaintiff remains pending and no motions regarding the counterclaim have been filed. *See* ANSWER OF STEVE CLINGMAN FOR AMENDED COMPLAINT FOR DAMAGES FOR MALICIOUS ABUSE OF PROCESS AND COUNTERCLAIM FOR PERSONAL INJURY AND PROPERTY DAMAGE (Doc. 8). By October 5, 2020 Defendant Clingman must file a notice of withdrawal of his counterclaim or a request for a trial setting on the counterclaim. If Defendant Clingman does not withdraw his counterclaim, Plaintiff may, by October 20, 2020 file motions regarding the counterclaim.

SENIOR UNITED STATES DISTRICT JUDGE

13